**CITY OF PHILADELPHIA et al.,**
**Plaintiffs,**

v.

**UNITED STATES of America et al.,**
**Defendants.**

**Civ. A. No. 29788.**

United States District Court
E. D. Pennsylvania.

Sept. 25, 1961.

———————

M. Mark Mendel, Asst. City Sol., David
Berger, City Sol., Herbert Smolen, Asst.
City Sol., Philadelphia, Pa., for City of
Philadelphia.

T. P. Shearer, Brandon & Shearer,
Pittsburgh, Pa., for other plaintiffs.

Lee Loevinger, Asst. Atty. Gen., John
H. D. Wigger, Atty., Dept. of Justice,
Washington, D. C., Joseph S. Lord, 3rd,
U. S. Atty., Philadelphia, Pa., for the
United States.

Robert W. Ginnane, Gen. Counsel, C. H.
Johns, Jr., Associate Gen. Counsel, I.C.C.,
Washington, D. C., for Interstate Com-
merce Commission.

Alfred W. Hesse, Jr., Philadelphia, Pa.,
for Reading Co.

Before BIGGS, Circuit Judge, and KRAFT and WOOD, District Judges.

WOOD, District Judge.

This action to set aside the order of the Interstate Commerce Commission, Division 3, dated May 17, 1961, in Finance Docket No. 21275, Reading Company Discontinuance of Service between Philadelphia and Bethlehem, Pa, was submitted to the court at a hearing on the merits on July 28, 1961. Upon consideration of the pleadings, the record before the Commission, and arguments and written briefs of counsel, we have reached the conclusion that the findings of the Commission are amply supported by substantial evidence in the record.

The proceeding before the Commission may be summarized as follows. The Reading Company sought permission to discontinue one of its round-trip weekday passenger schedules. It filed a petition with the Interstate Commerce Commission, as authorized by Section 13a(2) of the Interstate Commerce Act, 49 U.S.C.A. § 13a(2) for permission to discontinue three passenger trains operated between Philadelphia and Bethlehem, the effect of which would be to omit one round trip between these points each weekday. After due notice, a formal hearing was held at Philadelphia before a hearing examiner of the Commission, at which time plaintiffs herein and the railroad appeared and introduced evidence. On February 17, 1961, the examiner served his report and order recommending that the carrier's petition be granted. Plaintiffs then filed exceptions to the examiner's report, to which the carrier replied, and on May 17, 1961, Division 3 of the Commission entered the order here under attack affirming and adopting the examiner's report as its own. Subsequently, on June 10, 1961, the plaintiffs filed a petition for reconsideration of the order which was rejected by the Secretary of the Commission on June 23, 1961. The petition was not rejected on its merits. The rejection was based on a change in the Commission's Rules of Practice. A change in its rules precluded the consideration of the plaintiffs' petition by the full Commission.[1] Thereafter, the plaintiffs instituted this action.

The facts, as found by the Commission, show that the petitioner has sustained substantial financial losses from the operation of the trains in question during the past two and one-half years. On the other hand, the discontinuance of the trains would not result in an unjust and undue burden on interstate commerce. The Reading Company would continue to operate train passenger service between Philadelphia and Lansdale, and then instead of running the three trains from Lansdale to Bethlehem, would replace them with bus service between these points. This method of operation, it was found, would result in a net saving to the carrier of some $13,000 per year. Pursuant to the Commission's order, the carrier has discontinued the operation of these trains and has commenced the substituted bus service described.

The plaintiffs have attacked these findings of the Commission on the ground that proper accounting and proper allocation of avoidable costs show not a loss from the operation of these trains, but a profit. But the Commission, in considering the plaintiffs' contention, concluded that the financial data of record—showing a loss—was reasonably accurate and fairly realistic. We think the record, considered as a whole, supports the Commission's finding of financial loss. Questions of allocation of costs and accounting methods are particularly within the expert judgment of the Commission: those are matters which Congress has en-

---

1. The change was explained to the court by Mr. Mendel as follows: "Your Honor knows that any time according to the new rule * * * promulgated and passed on January 4, 1961, unless it is a matter of general transportation importance, if a hearing examiner has heard the matter and it is adopted by a division, this will constitute administrative finality, and the old remedy of additional review * * * will be denied." (NT 26, 27.)

trusted to the judgment of the Commission. Of course, we may not substitute our judgment for that of the Commission. Chesapeake & Ohio Ry. Co. v. United States, 283 U.S. 35, 42, 51 S.Ct. 337, 75 L.Ed. 824; United States v. Detroit & Cleveland Navigation Co., 326 U.S. 236, 241, 66 S.Ct. 75, 90 L.Ed. 38.

■ Plaintiffs have also argued (for the first time before this Court) that the failure of the full Commission to consider plaintiffs' petition was contrary to law and prejudicial to the plaintiffs. As we indicated above, the full Commission now considers petitions only when the Commission has, on its own motion, decided that the matter is one of general transportation importance. All other matters are decided finally by divisions of the Commission. Plaintiffs here contend that nowhere in the Commission's Rules of Practice is there a provision for a petitioner to request the full Commission to first decide whether a particular matter is, indeed, one of general transportation importance. The absence of such a provision, together with the inability of a petitioner to obtain the consideration of the full Commission of the merits of his petition, constitutes, in the plaintiffs' view, an unfair denial of their rights.

We cannot agree with this contention. There is no doubt but that the Commission has the right to prescribe its rules of practice with an eye to limiting consideration by the full Commission to those matters which are of general transportation importance. But even more pertinent is the fact that nowhere in this record is there even an allegation, much less any evidence, that this matter *is* in fact one of general transportation importance which would have warranted consideration by the full Commission. Therefore, the failure of the full Commission to consider the merits of plaintiffs' petition can in no way have prejudiced the plaintiffs.

In conclusion, we reiterate that the Commission's findings and conclusions are amply supported by substantial evidence on the record as a whole. We agree

that the discontinuance of the trains in question will relieve the carrier of a substantial revenue loss and will thus remove a burden on interstate commerce, and that the public convenience will not be impaired thereby.

Findings of fact and conclusions of law are filed concurrently with this opinion. Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.

The complaint will be dismissed.