ABC FREIGHT FORWARDING CORPO-
RATION, Plaintiff,

v.

UNITED STATES of America and Inter-
state Commerce Commission,
Defendants.

United States District Court
S. D. New York.

Jan. 8, 1959.

Nathaniel T. Helman, I. Richman, New York City, for plaintiff.

Victor R. Hansen, Asst. Atty. Gen., James E. Kilday, Willard R. Memler, Attorneys, Department of Justice, Washington, D. C., Arthur H. Christy, U. S. Atty., New York City, by Renee Ginsberg, New York City, for defendant the United States.

Robert W. Ginnane, Gen. Counsel, Arthur J. Cerra, Atty., Washington, D. C., for defendant Interstate Commerce Commission.

George H. Leonard, New York City, by Wilmer Hill, New York City, for intervening defendants.

Before MEDINA, Circuit Judge, and EDELSTEIN and PALMIERI, District Judges.

EDELSTEIN, District Judge.

Plaintiff has brought an action under 28 U.S.C. §§ 1398, 2321–2325 inclusive, to review a determination of the Interstate Commerce Commission denying its application under § 410 of the Interstate Commerce Act (56 Stat. 291, 49 U.S.C. § 1010, 49 U.S.C.A. § 1010) for a revised permit authorizing an extension of service as a freight forwarder of general commodities in interstate commerce between all points in the United States, except to the extent such service was already authorized in its effective permit. Five freight forwarders, who were parties to the proceeding before the Commission, were permitted to intervene as defendants.[1] After extensive hearings in several cities, an examiner of the Commission had filed a proposed report and order recommending that the application be denied. Upon the applicant's exceptions oral argument was heard and the Commission, Division 4, issued the report and order here under attack.[2]

Section 410(c) of the Act, 49 U.S.C. § 1010(c), 49 U.S.C.A. § 1010(c), provides:

"The Commission shall issue a permit to any qualified applicant therefor, authorizing the whole or any part of the service covered by the application, if the Commission finds that the applicant is ready, able, and willing properly to perform the service proposed, and that the proposed service, to the extent authorized by the permit, is or will be consistent with the public interest and the national transportation policy declared in the Interstate Commerce Act * * *".

■ The applicant, under this section, bears the burden of proving that the proposed service will be consistent with the public interest and the national transportation policy. Carloader Corp. Freight Forwarder Application, 260 I.C.C. 401, 403, permit time limitation revoked, 265 I.C.C. 1; Lifschultz Fast Freight, Extension—Eastbound to New England, 260 I.C.C. 569, 573. The gist of the Commission's decision was that the applicant had not met its burden because the evidence it presented was too vague and hypothetical to permit a finding of any specific proposed service that could be evaluated in terms of the public interest and the national transportation policy. The principal point in issue is whether the plaintiff's evidence did satisfy its burden.

■ The evidence of the services to be offered was essentially that the applicant would institute terminal-to-terminal service between New York and a number of other cities, some specifically named and others described as "key points". But there is nothing in the evidence from which it could be concluded with any assurance that the plaintiff proposed to offer a freight forwarding service between any of these points,[3] nor was it specified what the nature of the service would be in terms of time, cost or facilities. Moreover, the institution of any particular service would depend upon

1. 28 U.S.C. § 2323. The intervenors are: Acme Fast Freight Inc.; National Carloading Corporation; Springmeier Shipping Co., Inc.; Universal Carloading & Distributing Co., Inc.; and Western Carloading Company.

2. ABC Freight Forwarding Corporation—Extension—Nationwide, Docket No. FF–

38 (Sub. No. 4), dated April 29, 1957; decision reported at 303 I.C.C. 149.

3. Except for the testimony of two shippers who expressed a desire for plaintiff's service between New York and Dallas and Fort Worth, Texas, and were advised that such a service would be instituted.

the demand for it, the tonnage available, the volume involved, the practicability of the operation and the profitability of the traffic. The lack of particularity in the applicant's evidence was repeatedly called to its attention, and its response indicated a studied desire to avoid any clear statement of the services it proposed. Indeed, the plaintiff's position is that the Commission has never before required such particularization, with the implication that it may not now do so. It is not at all clear that the Commission has deviated from its previous course, but even if it has, it is not estopped by its own precedents in the continuing regulation of a dynamic industry, in the reasonable exercise of its expertise under Congressional mandate. See Virginian Railway Company v. United States, 272 U.S. 658, 663, 666, 47 S.Ct. 222, 71 L. Ed. 463.

Approximately 80 witnesses, representing receivers and shippers of a wide variety of commodities and freight, appeared in support of plaintiff's application. Their testimony was little more than an endorsement of the applicant's ability and capacity as a forwarder and an expression of intent to utilize such desirable services as the plaintiff is capable of making available if and when they were made available. For example, there were expressions of opinion that the plaintiff's service was superior to that of other forwarders in speed, dependability, tracing of shipments and settlement of claims. On this basis, some said they would use the plaintiff's service more extensively if it were more extensively available. Some indicated they would use the plaintiff's service if it proved to be superior to that of existing freight forwarders and motor carriers, or if there were not other forwarder service available. Others complained of the inadequacy of certain existing services and felt that the institution of plaintiff's service would improve freight forwarder service generally, and said they would use plaintiff's service if instituted and if it were an improvement over that of existing forwarders. One shipper, in reply to a hypothetical question assuming a service with a number of highly desirable features, when asked if he would use such a service, said: "I would be kind of crazy not to." The testimony of such witnesses was obviously not based upon knowledge of any specific service to be offered, nor is there any indication in the record that the plaintiff proposed to institute any services designed to meet any needs described by supporting shippers.

The plaintiff's position seems to be that so long as it possesses the demonstrated business capacity and the desire and intention to expand from a regional to a national operation, with the potential of acquiring business in the expanded territory, then it must be granted authority to extend its services, when and if in its judgment the demand warrants the effort. The application has been characterized as a shotgun application seeking a hunting license to roam around the United States and put in service between any points plaintiff sees a chance of earning a profit. The statute requires more of a commitment by the plaintiff and the Commission has found that the plaintiff has not undertaken to give it. Section 410(d),[4] which forbade the Commission to deny an application solely on the ground that the proposed service would be in competition with the service performed by any other freight forwarder, is not involved in the finding. Moreover, the Commission did not even predicate its decision under § 410(c) upon the possible competitive effect of the applicant's proposed operations. The Commission never reached the issue and there was no finding of inconsistency with the public interest or the national transportation policy. The Commission found merely that there was in the record no clear-cut and definite descrip-

4. The section existing at the time of the Commission's decision, 56 Stat. 291, at 292, has since been amended, 71 Stat. 452, 49 U.S.C. § 1010(d), 49 U.S.C.A. § 1010(d).

**406**

tion of the specific service, or its territorial extent, which the applicant proposed to perform if the authority sought were granted.

 Upon the record, this finding must be sustained. It is the function of the Commission to appraise the facts and draw inferences from them, bringing to bear upon the problem an expert judgment. "The function of the reviewing court is much more restricted. It is limited to ascertaining whether there is warrant in the law and the facts for what the Commission has done." United States v. Pierce Auto Freight Lines, 327 U.S. 515, 536, 66 S.Ct. 687, 698, 90 L. Ed. 821. The principle that the courts will not examine the facts upon which the Commission bases its orders further than to determine whether such findings are supported by substantial evidence in the record is so well established as to be axiomatic. It is the rule of administrative finality written into the Administrative Procedure Act, 5 U.S.C. § 1001 et seq., § 1009(e), 5 U.S.C.A. §§ 1001 et seq., 1009(e). The Commission's appraisal of the facts was well within its discretion and supported by the record as a whole. Whatever the evidence required to prove a proposed service consistent with the public interest and the national transportation policy, it cannot be held that the Commission was unreasonable in declining to make the required finding on the basis of the evidence offered to it in this case.

The plaintiff also alleges procedural errors in the admission and exclusion of evidence by the Commission's examiner. Severe prejudice is claimed as a result of the admission, over objection, of evidence about certain unregulated transportation activities with which plaintiff's president was alleged to be affiliated. But such evidence, even if it be assumed that it was improperly admitted, was not relied upon by the Commission and had no bearing whatever on its decision, and was therefore not prejudicial. Market Street Ry. Co. v. Railroad Commission of California, 324 U.S. 548, 561–562, 65 S.Ct. 770, 89 L.Ed.

1171. The remaining allegations of error are similarly without merit, within the rule of prejudicial error. Section 10 (e) of the Administrative Procedure Act, 5 U.S.C. § 1009(e), 5 U.S.C.A. § 1009(e). There is no basis to the contention that the plaintiff was not afforded a full and fair hearing before the examiner.

Accordingly, the complaint will be dismissed.

MEDINA, Circuit Judge, and PALMIERI, District Judge, concur.